IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 05-317 |
| | ) |
| MICHAEL ALEX WEIN | ) |

## MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.

July 27, 2006

Defendant, Michael Alex Wein, asks the court to suppress evidence seized from his computer by two agents of the Federal Bureau of Investigation ("FBI") on April 7, 2004. Defendant contends that based upon the facts and circumstances, the FBI agents' warrantless entrance into his home and subsequent search of his computer was involuntary. Defendant argues that the FBI agents obtained his consent to search and then seized his computer through intrusive intimidation and coercion designed to and, in fact, overcame his will to resist. Thus, defendant argues, the evidence should be suppressed on the basis that the agents violated the Fourth amendment to the United States Constitution.

Defendant has standing to present this motion. For the following reasons, defendant's motion to suppress is granted.

I.    FINDINGS OF FACT

On June 6, 2006, an evidentiary hearing was held on defendant's motion. Based on the credible evidence introduced, we make the following findings of fact.

At approximately 7:30 a.m., on April 7, 2004, FBI special agents Paul J. Vitchock and Marc S. Southland went to defendant's home in the Squirrel Hill neighborhood of Pittsburgh, Pennsylvania for the purpose of conducting an investigation technique known as a "knock and talk." Defendant answered the door in shorts and a tee shirt. The agents identified themselves and told the defendant they had evidence that his credit card had been used to purchase items from a company that was a source of child pornography. The agents asked to speak to defendant further about the purchase. At that point, defendant asked permission to go upstairs and get dressed, and the agents waited for him on his front porch.

When defendant returned to his front door, Agent Vitchock told him that they wanted to come inside his home and talk to him about the transaction. Agent Vitchock also stated that he wanted to examine defendant's computer. Defendant did not want the agents to enter his home, but Agent Vitchock convinced him to do

2

so by making threats. Specifically, I find credible defendant's following testimony as to what the agents said to him:

They had come very early in the morning before anybody was up and about, and that there were two ways that this could transpire; that either I could let them into my home and cooperate with them, or they would go Downtown, get a warrant, come back to my house, knock down my door, with their FBI jackets, with their lights flashing and sirens blaring, and they would drag me out of my house in handcuffs and leg irons, in front of my neighbors, in the middle of the day.

Hearing Transcript at p. 85. As a result of what Agent Vitchock said to him, as well as the intimidating manner in which he spoke, defendant felt he had no choice but to let the agents into his home and answer their questions. Otherwise they would use their authority to humiliate him before his neighbors and family. Id. Of course, the agents had no probable cause to arrest defendant for any crime at that point.

I also find credible defendant's following testimony:

I was scared to death. And actually, I live on Mount Royal. That's a street that two sets of great aunts and uncles live on. One of them was there for 30 years, another was on that street for 50 years ... [all of my neighbors] not only ... know me, but I mean, I also work in Squirrel Hill .... My office is probably no, no more than three-quarters of a mile from my home, on Forbes Avenue in Squirrel Hill.

Id.

While sitting at the dining room table, Agent Vitchock told defendant that "the best way to get to the bottom of the situation was to get his consent to conduct a forensic evaluation

3

of the computer at [the FBI] offices." Id. The agents presented defendant with a consent to search form. Government Exhibit A.

At that point, defendant did not want to sign the consent to search form. Defendant told the FBI agents that he relied heavily on his computer for both business and personal use, and was concerned over how long he would be without his computer. Agent Vitchock told him that the FBI usually keeps computers for "approximately two or three days." The fact is, the agents had no intention of, and have not, returned the computer to this day. Agent Vitchock then suggested that they go upstairs and look at defendant's computer. Defendant consented to permit the agents to go upstairs to look at his computer because he was extremely frightened. I find credible the defendant's following testimony:

> I was still very, very frightened about the whole situation. I had never experienced anything like that before in my life, and it kept running through my head, if I didn't cooperate with them that I was either going to get dragged out of my house, or even worse, if they didn't find me at my home during the day when they said they would come back, they would come to my office. And I know my company well enough to know if FBI agents came to my office and took me out in handcuffs and leg irons, I would be fired on the spot.

Hearing Transcript at p. 91. Defendant agreed to escort the agents to his office and allowed them to examine his computer, but did not sign the consent to search form. With defendant observing them, the agents used the search function on the

4

computer to locate photographs. After viewing several social and family photographs, Agent Vitchock accessed photographs which the government intends to introduce at trial. At that point, the agents asked defendant a second time to execute a consent to search computer form. Defendant executed the form and the agents seized the computer.

The agents returned to defendant's home eighteen months later at 7:30 in the morning to arrest him for possession of material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. §2252(a)(4)(b).

## II.   STATEMENT OF REASONS

The key issue is whether defendant voluntarily consented to allow the FBI agents into his home to conduct a warrantless search of his computer on April 7, 2004 and thereafter seize it.[1] Acting pursuant to a voluntarily given consent is an exception to

---

[1] Despite the parties' briefs in this case, based on the testimony at the evidentiary hearing, we find that there was no dispute as to whether defendant was "in custody." The entire questioning and search occurred within defendant's home and although, the agents employed coercive tactics, their actions did not rise to the level of a custodial interrogation. Instead, this motion turns on whether defendant voluntarily consented to the agents' entry into his home and search and seizure of his computer. Both agents testified that they did not have probable cause to obtain a search warrant prior to conducting the "knock and talk" on April 7, 2004. As such, we evaluate the voluntariness of defendant's consent to the warrantless search of his computer.

the government's search warrant requirement and is constitutionally permissible.  Schneckloth v. Bustamonte, 412 U.S. 218 (1973).  The consent may be express or implied, but it must be voluntary.  Id.  The issue of whether a defendant has voluntarily consented to a warrantless search is a question of fact and will be determined by the totality of the circumstances. Id. at 227.  In relying upon consent to justify the legality of a search, the government bears the burden of proving that the consent was "freely and voluntarily" given.  Bumper v. North Carolina, 391 U.S. 543, 548 (1968).  In Schenckloth, the Court also instructed that the test for coerciveness is whether a defendant's will was overborne and his capacity for self-determination critically impaired.  Schnecklotn, 412 U.S. at 226. In determining coerciveness, the Court of Appeals for the Third Circuit has identified a relevant factor to be whether a reasonable person in the same situation would believe he was free to terminate the encounter.  U.S. v. Kim, 27 F.3d 947 (3d. Cir. 1994).

The factors used to determine whether a defendant voluntarily consented to a warrantless search include:  the defendant's knowledge of his constitutional right to refuse consent; his age, intelligence, and education; the degree to which he cooperates with the police; his attitude about the

6

likelihood of discovering contraband; by the defendant's prior actions or agreements; and, by the facts and circumstances surrounding the search itself. See id.; U.S. v. Himmelreich, No. 05-214, 2006 WL 1722399 at *5 (M.D. Pa. June 16, 2006). Although each of these factors is relevant to the issue, no single factor is dispositive.

Based on the testimony at the evidentiary hearing, the court finds defendant's testimony credible on the point of the involuntariness of the consent given to the agents at his home on April 7, 2004. The court employed customary techniques to ascertain the credibility of the witnesses, including, but not limited to: appearance and conduct of each witness, the manner in which he testified, the character of the testimony given, his intelligence, motive, state of mind, and demeanor while on the stand. Further, I took into consideration each witness' ability to observe the matters as to which he has testified, and whether he had an accurate recollection of these matters.

I find defendant's recollection to be detail specific and easily recalled. In contrast, on several occasions, the agents testified that they could not recall important details. It was, in fact, my distinct impression that the agents were knowingly and consciously evasive, if not outright untruthful, on the witness stand. I also find that the agents had a very strong

7

motive to justify their search and subsequent arrest in this situation. Given the agents' admission that they did not have probable cause to obtain a search warrant prior to visiting defendant's residence on April 7, 2004, the government's entire case rests on the evidence obtained as a result of the warrantless search that they conducted. As such, the agents may have been highly motivated to demonstrate via their testimony that defendant voluntarily consented to the warrantless search when, in fact, they had knowingly and intentionally intimidated him into doing so.[2]

As to the voluntariness of defendant's consent, I am to consider knowledge of his constitutional right to refuse consent. Based on the testimony from the evidentiary hearing, it appears that defendant was never fully apprised of his constitutional right to refuse consent. Instead, he was made to believe that his choice was to permit the agents to enter his home and search his computer quietly at 7:30 a.m., or they would return in broad daylight, dressed in FBI flap jackets, with a search warrant to remove defendant from his home in handcuffs and leg irons. Although Agent Southland testified on cross examination that had

---

[2] We note that the FBI agents assigned to this case were relatively new on the job. At the time of the search and seizure at issue here, Agent Vitchock had been an FBI agent for approximately a year and a half, and Agent Southland had been an FBI agent for less than one year.

8

defendant refused to provide entry into his residence or refused to allow the agents to search his computer, that they would have simply left, this was not communicated to defendant. See Hearing Transcript at p. 56.

I also note that prior to this incident, defendant had never had an altercation with law enforcement. As such, he had no other "real life" experience that would add to his knowledge of his constitutional right to refuse consent. Overall, this factor weighs in defendant's favor.

Next, I am to consider defendant's age, intelligence, and education. Here defendant is well-educated, having earned a bachelor's degree in Penn State in political science and German. Prior to his arrest in the current case, he worked as an advisor for PNC Bank for more than a decade. He was approximately forty years old at the time of the incident.

I am also to consider the degree to which defendant cooperated with the police, and his attitude about the likelihood of discovering contraband. By all accounts, defendant was entirely cooperative with the FBI agents during the encounter at his home on April 7, 2004. See e.g., Hearing Transcript at p. 61, 64. As set forth above, however, he did so because he was so fearful that he felt that he had no choice but to cooperate.

The facts and circumstances surrounding the search itself indicate that defendant's consent was involuntary. The credible evidence establishes that the agents awoke defendant at 7:30 a.m. on a weekday to talk with him about his possible purchase of child pornography. The agents freely admitted that they did not have probable cause to obtain a search warrant at that time. The court finds defendant's testimony that the agents threatened to return to his home or office in broad daylight with a warrant, dressed in flap jackets, to conspicuously arrest him, to be credible.

As to the coerciveness of the agents' conduct, the evidence establishes that defendant's capacity for self-determination was critically impaired. Specifically, the court finds defendant's testimony credible that he was so intimidated and frightened by the agents to the point that his free will was overcome, and under the same circumstances, a reasonable person would not have believed he was free to terminate the encounter. <u>See</u> <u>Schneckloth</u>, 412 U.S. at 226. We also note that the defendant impressed the court as being easily intimidated. Defendant's testimony that he was frightened and intimidated by the agents is buttressed by the fact that he is of a slight physical build, especially in comparison to Agents Southland and Vitchock.

In light of the above factors, we conclude that defendant did not voluntarily consent to the warrantless entry into his residence and subsequent search and seizure of his computer. Therefore, all evidence obtained by the government at any time after the agents entered his residence are hereby suppressed. Moreover, any probable cause acquired at the time of the search of defendant's computer was fruit of the unconstitutional search, and is therefore suppressed. Wong Sun v. U.S., 371 U.S. 471 (1963).

III.   CONCLUSION

Therefore, this 27th day of July, 2006, IT IS HEREBY ORDERED that defendant's motion to suppress [document # 31] is GRANTED. The evidence seized from his home computer on April 7, 2004, is hereby suppressed.

BY THE COURT:

J.

cc:   All counsel of record

11